Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2992 | **DATE** | 1/26/2001 |
| **CASE TITLE** | Gorgonz Group vs. Marmon Holdings | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, the Court denies Wells Lamont's motion to dismiss BigBang's counterclaim (30-1). Wells Lamont is directed to answer the counterclaim on or before February 5, 2001.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 3 0 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 35 |
| | Mail AO 450 form. | ⌀ | IS docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | 01 JAN 29 PM 4: 02 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE GORGONZ GROUP, INC., )
)
    Plaintiff, )
)
vs. ) Case No. 00 C 2992
)
MARMON HOLDINGS, INC. and )
WELLS LAMONT CORP., )
)
    Defendants, )
)
vs. )
)
GRAY MATTER HOLDINGS, LLC and )
BIGBANG PRODUCTS, LLC, )
)
    Third Party Defendants. )

DOCKETED
JAN 3 0 2001

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Defendant Wells Lamont Corp. has moved to dismiss the counterclaim of third party defendant BigBang Products, LLC, for failure to state a claim upon which relief may be granted. For the reasons stated below, the Court denies Wells Lamont's motion.

### FACTS

We take the facts as they are alleged in BigBang's counterclaim. In February 2000, BigBang entered into an agreement with Gorgonz Group, Inc., which granted BigBang a license to manufacture, market, and sell "Ear Warmers," a product created and patented by Gorgonz. Gorgonz had previously granted Wells Lamont an exclusive license to manufacture and sell Ear Warmers in North America. Under the terms of the

35

Wells Lamont agreement, if the contract was terminated due to Wells' Lamont's breach, it was prohibited from manufacturing, marketing, and selling Ear Warmers for three years after the termination. On or about January 26, 2000, Gorgonz notified Wells Lamont that the contract was terminated due to Wells Lamont's breaches. Five days later, when BigBang obtained the license from Gorgonz relating to Ear Warmers, BigBang became the only source from which customers could legally obtain Ear Warmers.

BigBang alleges that despite the non-competition clause in Wells Lamont's contract, Wells Lamont solicited and accepted orders for Ear Warmers through April 2000, even though it knew or should have known of BigBang's contract with Gorgonz. BigBang also claims that Wells Lamont informed customers that it still had a license to manufacture, market, and sell Ear Warmers and on several occasions told customers that it had an exclusive license to do so. On or about April 17, 2000, Wells Lamont conceded that its license agreement had been terminated but insisted that it had a right to fill orders placed prior to February 26, 2000 as long as the Ear Warmers were delivered prior to July 26, 2000. However, BigBang says that Wells Lamont continued to deliver the product even after July 26, 2000.

BigBang alleges that by its actions, Wells Lamont intentionally interfered with BigBang's prospective business relations, violated the Lanham Act, 15 U.S.C. §1125(a), and committed the tort of unfair competition.

## DISCUSSION

Wells Lamont has moved to dismiss BigBang's claims under Federal Rule of Civil Procedure 12(b)(6). Under this Rule, "[a] complaint may not be dismissed unless it

is impossible to prevail 'under any set of facts that could be proved consistent with the allegations.'" *Moriarty v. Lewis Funeral Directors, Ltd.*, 150 F.3d 773, 777 (7th Cir. 1998) (quoting *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984)). Therefore, "[t]he court 'must look to see whether there is any possible interpretation of the complaint under which it can state a claim.'" *Skolnick v. Correctional Med. Serv., Inc.*, No. 99 C 3155, 1999 WL 1032782, at *2 (N.D. Ill. Nov. 12, 1999) (quoting *Martinez v. Hooper*, 148 F.3d 856, 858 (7th Cir. 1998)). "This standard gives effect to the liberal notice pleading philosophy that underlies the Federal Rules of Civil Procedure, as opposed to the more demanding fact pleading systems in place in many other jurisdictions." *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998).

**1.     Tortious interference claim**

BigBang's claim that Wells Lamont tortiously interfered with BigBang's prospective business relations is sufficient to state a claim. The elements of this claim include: "1) plaintiff's reasonable expectation of entering into valid business relationships; 2) defendant's knowledge of that expectation; 3) defendant's intentional interference directed toward specific parties or an identifiable prospective class of third persons; and 4) damages to the plaintiff." *Skolnick*, 1999 WL 1032782, at *3; *see McIntosh v. Magna Systems, Inc.*, 539 F. Supp. 1185, 1192 (N.D. Ill. 1982). Only the first and third elements are placed in issue by Wells Lamont.

BigBang has adequately alleged that it had a reasonable expectation of entering into valid business relationships. It has alleged that as of February 2000, it was the only legal seller of Ear Warmers. According to BigBang, when Wells Lamont held an

exclusive license to sell the product between 1996 and January 2000, it sold hundreds of thousands of Ear Warmers to retailers. *See* BigBang Counterclaim ¶23. Further, both parties agree that Ear Warmers is not only a unique product, but also a seasonal one, purchased by retailers in substantial quantities on a repeated basis. *Id.; see also* Wells Lamont Counterclaim ¶77. In order for these retailers to continue to buy the product after Wells Lamont's termination, they would have to go to BigBang; based on the prior sales of the product, there is reason to believe they would do so. In addition, the fact that Wells Lamont allegedly sold Ear Warmers after its termination indicates that there was a demand for the product, making reasonable BigBang's expectation of future sales to retailers.

Wells Lamont argues that BigBang's claimed expectation is not reasonable because the retailers that bought the product who had a prior relationship with Wells Lamont, but no relationship whatsoever with BigBang. Wells Lamont contends that all BigBang could possibly have was a "mere hope" of entering into business relationships, not a reasonable expectation that such relationships would ensue. However, the existence of a past relationship is unnecessary to state a claim for tortious interference. *See Cranberry Prod., Inc. v. Maharishi Ayur Veda University*, No. 00 C 1953, 2000 WL 1745278, at *4 (N.D. Ill. Nov. 12, 1999). "The Federal Rules do not require that [a] complaint allege[s] the specific third party or class of third parties with whom [the plaintiff] claims to have had a valid business expectancy." *Cook*, 141 F.3d at 328. Thus, an "identifiable, existing relationship" is not necessary in order to state a claim for this type of tortious interference. *Cranberry*, 2000 WL 1745278, at *4. All that is necessary

4

is that BigBang allege a reasonable expectancy to enter into future business relations, which it has done based on its alleged position as the exclusive distributor of Ear Warmers. *See Herdrich v. Pegram*, 154 F.3d 363, 369 (7th Cir. 1998) (on a motion to dismiss, the court decides not whether the plaintiff has a winning claim, only whether it has a claim at all).

BigBang has also adequately alleged the third element of intentional interference, namely that Wells Lamont directed its interference towards third parties, in this case the retailers. To be held liable for tortious interference with a business expectancy, one must have "taken some wrongful action, directed at a third party, to induce the third party not to do business with the plaintiff." *Young v. Connecticut Mut. Life Ins. Co.*, No. 90 C 254, 1990 WL 125496, at *5 (N.D. Ill. Aug. 17, 1990). This action "must be some sort of direct interference with the relationship between the plaintiff and the third party, such as disparagement or wrongful conduct." *Id.* at *4. BigBang has alleged that Wells Lamont not only illegally sold Ear Warmers after its contract with Gorgonz was terminated, but also told retailers that it had a right to do so, and in some cases claimed that its selling rights were exclusive. These allegations are sufficient to constitute "intentional and unjustified" interferences that "prevented [BigBang's selling] expectancy from ripening." *Skolnick*, 1999 WL 1032782, at *3.

Wells Lamont argues that BigBang's counterclaim is insufficient because it fails to allege the absence of privilege. However, "if the complaint may not be fairly be said to introduce the existence of a recognized or common law privilege, it is not the duty of [BigBang] duty to plead [] lack of justification, but it becomes the defendant's burden to

5

plead and prove the privilege as an affirmative matter." *Zdeb v. Baxter Int'l, Inc.,* 297 Ill. App. 3d 622, 632, 697 N.E.2d 425, 432 (1998) (quoting *Roy v. Coyne,* 259 Ill. App. 3d 269, 283, 630 N.E.2d 1024, 1024 (1994)). On the face of BigBang's counterclaim, a privilege is not implicated, as BigBang claims to be the only company legally allowed to sell Ear Warmers after it contracted with Gorgonz and Gorgonz terminated Wells Lamont's contract.

**2.    Lanham Act claim**

BigBang's allegations are sufficient to state a claim for both false designation of origin and false advertising under section 43(a) of the Lanham Act, 15 U.S.C. §1125(a). To state a claim of false designation of origin under section 43(a)(1)(A), BigBang must allege that 1) Wells Lamont used "a false description or representation in connection with goods or services, 2) [Wells Lamont] caused such goods or services to enter into commerce, and 3) [BigBang] believes it will be damaged as a result." *PS Promotions, Inc. v. Stern,* No. 97 C 3742, 2000 WL 283092, at *5 (N.D. Ill. Mar. 8, 2000); *Web Printing Controls Co., Inc. v. Oxy-Dry Corp.,* 906 F.2d 1202, 1204 (7th Cir. 1990). BigBang has all three elements. It claims that Wells Lamont falsely represented itself as legally able to sell Ear Warmers, a patented product and entered the goods into interstate commerce by selling them throughout the United States, and that BigBang lost sales as a result of the false representations.

To state a false advertising claim under section 43(a)(1)(B), BigBang must allege that Wells Lamont "1) made a false or misleading statement, 2) that actually deceives or is likely to deceive a substantial segment of the advertisement's audience, 3) on a subject

material to the decision to purchase the goods [or service], 4) touting goods entering interstate commerce, 5) and that results in actual or probable injury to the plaintiff." *PS Promotions*, 2000 WL 283092, at *12 (quoting *B. Sansfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999)). "A statement is false under the Lanham Act if it is literally false, but also if it is literally true or ambiguous but conveys a false impression, is misleading, or is likely to deceive consumers." *Id.*; *see Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 821 (7th Cir. 1999). BigBang has alleged that Wells Lamont's false statements concerning its ability to sell Ear Warmers deceived retailers, causing them to illegally purchase the goods from Wells Lamont, and that BigBang was harmed because it lost sales as a result of Wells Lamont's actions. These allegations are sufficient to state a claim.

3.  **Unfair competition**

Finally, BigBang has stated a claim for unfair competition. Illinois courts have not specifically enumerated the elements of the common law tort of unfair competition. *See Custom Bus. Sys., Inc. v. Boise Cascade Corp.*, 68 Ill. App. 3d 50, 52, 385 N.E.2d 942, 944 (1979). However, in *Zenith Elec. Corp. v. Exzec, Inc.*, No. 93 C 5041, 1997 WL 223067, at *5 (N.D. Ill. Mar. 27, 1997), the court observed that the allegations underlying a claim of tortious interference with prospective economic advantage also suffice to state a claim for unfair competition. Because BigBang's counterclaim adequately alleges tortious interference, BigBang's unfair competition claim is sufficient as well.

7

## CONCLUSION

For the foregoing reasons, the Court denies Wells Lamont's motion to dismiss BigBang's counterclaim [Item 30-1]. Wells Lamont is directed to answer the counterclaim within 14 days of the date of this order.

                                                                                            _____
                                                                                            MATTHEW F. KENNELLY
                                                                                            United States District Judge

Date:   January 26, 2001